Please the court opposing counsel. I represent the plaintiff below and the appellant at this level. This is a case involving the police going to a house, removing children from a house and to a public school and removing those children and taking them to the child advocacy center for an interview. I believe that the district court used the wrong legal standard and that the facts don't support the correct legal standard. I believe that the strongest case we have is the U.S. Supreme Court case of Payton v. New York that as of tomorrow Payton will be 45 years old. So this case was decided many years before the facts of this case. In the Eighth Circuit our strongest case I believe is Heartland Academy Community Church v. Waddell. It's a case from 2005. It basically is just a regurgitation of the legal standard in Payton. Payton says that to go into someone's home to do a search, a seizure, arrest somebody, you're going to have to have either the consent of the people that live there on the house or you're going to have to have probable cause and exigent circumstances. And in this case when the police arrived at the house they asked the adults if they could take the children and the adults said no. We want to see a warrant. You don't have a warrant. We don't consent. Counsel, what is the constitutional provision that's at play here? Is it the Fourth Amendment or the Fourteenth Amendment? No, this is not a Fourteenth Amendment case. This is strictly a Fourth Amendment case. Well, so is your suggestion that the parents have a Fourth Amendment right or interest here or are you only saying that the children do and the parents are suing on behalf of the children? I think the right that we're trying to get here is that you just simply can't go into someone's home and take children. I get that but I guess I'm struggling to anchor it and wondering if there's a Fourteenth Amendment claim or if there's a distinction between the rights of the children and the substantive due process rights of the parents and their interests with their children. And that may not be a distinction that you think exists and may not matter in your mind and that's fine but that's kind of the question I have here. It seems to me there may be different constitutional provisions at play and different legal standards at play. The district court noted here and I know we have cases addressing, you know, I think the Stanley cases that talk about, you know, the role of extant circumstances and the Fourth Amendment in this context. And the district court said the Fourth Amendment seems, I forget what the language was, like misplaced or something like that in this context. But your argument here is it's only a Fourth Amendment claim. Is that correct? Right. There's a lot of these cases that argue Fourteenth Amendment, the family association type deal. We're not doing that at all. You don't, you disclaim that. They went into the house. That is the legal part that just comes under the Fourth Amendment. Okay. So if we write an opinion and we write it in your behalf, we don't have to address any Fourteenth Amendment issues. Is that your view? Your Honor, I'm hearing impaired. That's fine. We don't need to, just to be clear, we don't need to address any due process issues from your perspective. Okay. I'm sorry. I just can't hear you as well. My hearing aid battery quit on this side.  So when I look at you, that's not true. I'm not trying to pull a Joe Biden. I just literally don't understand. We don't need to address the Fourteenth Amendment in this case. Okay. Thank you. The Fourth Amendment issue is one that has been litigated through many of the circuit courts of appeal throughout the United States. But what I want to focus on is that this is not new stuff here in the Eighth Circuit. And so what happened is we have a situation where there is no exigent circumstances. The lady that is the defendant in this case, the detective said that there is no exigent circumstances. We asked her during the in the depositions. She said that she was there strictly as a transporter to take the children and gather the children also at the schools and take them in for an interview. Now the children were taken from the school as opposed from the home. Is that correct? Sir. Were the children taken from the home or from the school? There were a couple of them taken from the home and a couple of them from the school. I guess there was both. And so what happens is the district court didn't really go over the aspect of the children at the school. The district court was focused, and rightfully so I think in many ways, of leading up to what led them to even go out there. My clients are not the best parents and they let a guy in their home that died of a drug overdose. And they are weed smokers and they found marijuana and all that is related to that. But what happened is when they went to the house, there was a baby there and they did not take the baby. The baby I would assume, I've never had any children, but I know that little kids will crawl around on the floor. So the call came in to the DHS as environmental neglect. So do you think the officers initially could have taken the children from the home? Before, at the initial, when they saw the situation with the baby on the floor and drugs around, could that, were there accident circumstances at that point to take the children out of the home? I think so. And so what changed? Was it the passage of time? Well, accident circumstances has to be in place at the time of the taking. Stanley versus Finnegan, the first case, talked about that the seizure has to have those necessary elements at the time. And so they don't get a search warrant. And they don't get a search warrant because the officer doesn't think that a search warrant is necessary. And if you don't have a search warrant, you have to have accident circumstances and probable cause to take somebody out of their home. I know of no way of applying the legal standard, which is, the judge said, is arguable, reasonable suspicion to get into a house. I have yet to, I can't find anything on that, period. And so they should have stopped, got a warrant, they had time to get a warrant, but they didn't do that. And I think that the case law is sufficient to alert the officer to that. So this may be in your papers, but what would the warrant be? I'm just imagining what the officers, would it be a drug warrant? Would it be something under the state social services? Is there a mechanism at that point for obtaining a child in need of assistance warrant? What are you suggesting the officer should have gotten at that point? Well, I don't think you have to have a typical seizure warrant like you would use to execute a drug search warrant, but you have to get something, you can get a pickup order from a judicial officer. I don't know the exact wording of it, but obviously you're going to have to have something from a judge. The reason is you have to have a judge to look at these facts and see if they add up to enough to get into somebody's house, or to seize children from a public school, and then take those children to a third place. But those are different claims, aren't they? In other words, is there a different legal claim? You're anchoring your Fourth Amendment claim on the house, but now we have children, there are children at the school. It's the same claim, but a different version of it. The claim involving the children is going to be based upon Terry v. Ohio, United States v. Mendenhall, Florida v. Bostick, Mincy v. Arizona, that line of cases. You still have to have, to be able to take somebody and then remotely take them somewhere else in a police car, you have to have probable cause. We're way past arguable reasonable suspicion at that point, in my opinion. Typically, those have been those Fourteenth Amendment cases whenever they take them or interview them at the school. But no, I want to make absolutely clear, I'm not arguing anything related to the Fourteenth Amendment, this is all just straight Fourth Amendment. The thing that is absolutely essential to seize these children, you have to have a situation where they're in imminent danger. In fact, there are many cases on that in the other circuits. In this, we don't have an exact pattern in this case. We have one that was decided about a year afterwards. That doesn't really help me because I know what the standard is as far as the police have to be on reasonable notice of what their conduct should be. You don't hammer them for not knowing something. But the problem in this case is, the one that's the most like it is the Iowa case where the arrested the lady for not cooperating. But that case was done a year after. But it goes back to, it reverts back to Peyton. It's analysis. Thank you, Mr. Norwood. Ms. Gibson. Good morning, your honors. May it please the court, counsel. I'm Gabrielle Gibson and I represent Detective Janice Wilson in her individual capacity. Detective Wilson is asking this court to affirm the district court's order granting summary judgment and qualified immunity to her for the following reasons. First, the district court correctly found that Detective Wilson had reasonable suspicion of child abuse on the day that she transported the children to the CFAC. Counsel, how do you get into the house? What gets them to the house? What gets them the authority to take the children both from the home and from the school? Yes, your honor. So going back and the district court noted all of these factors. Going back to October of 2019, there were two overdoses. One was fatal. One involved fentanyl and the other involved oxycodone. So that was two and a half months or so. Yes, sir. Collapsed. Yes, sir. And so that started a drug investigation. And so fast forward to February 26th of 2020, the detectives, including Detective Wilson, went through the trash that was on the curb of the Welter's residence or all of the plaintiff's residence. And they found THC tar or wax and a baggie that said green crack on it. And so Detective Hudgins submitted an affidavit for a search warrant. A judge issued- Is that a term of art, green crack? I mean, is that something someone would reasonably know what that means? Your honor, I'm not 100% sure what green crack is. But I mean, crack cocaine is what I assume crack is. So is the basis of your argument following up on Judge Smith's question, is it that there were exigent circumstances? Is that? Or that there was enough probable cause where you didn't need a warrant to enter a home? I'm speaking specifically about the home here. So the undisputed fact in this case is that the officers did not enter the home on the day of the transport. That is on page- Well, they ordered the children out of the house. Is that correct? Not necessarily, your honor. So the plaintiffs were outside of the home. I think it was in the garage area when they were talking to the officers. The record isn't extremely clear on whether all of the kids, because there's two- So are you arguing the Fourth Amendment wasn't implicated? Or are you arguing that there was probable cause that justified what you consider non-entry, I guess? Or were there exigent circumstances? Which way do you go? We're arguing that there was, that the district court properly found that there was reasonable suspicion. The Stanley cases, the one in 2018 and then one in 2021, both clearly state that it's only reasonable suspicion that is needed here. Does that include, do those cases include entry into a home? Well, the Stanley two, yeah. So Stanley one was based on the motion to dismiss stage. But so Stanley two, that was decided in 2021, they executed a search warrant. And so they did enter the home based on the search warrant, but then they decided that they needed to investigate the children at that point. So there was a search warrant for that specific case, but the Eighth Circuit said that we have never held that children have a Fourth Amendment right not to be separated from their parents absent probable cause to believe the parents are guilty of child abuse. And then, so I don't believe that probable cause is the standard in the Eighth Circuit. And actually, the Stanley case, it talks about that the different circuits have differing standards. Some say reasonable suspicion, some say exigent circumstances, and some say probable cause. In the Eighth Circuit, the Eighth Circuit has found that it's reasonable suspicion is the standard. In the Stanley two case, it talks about that it presents a different Fourth Amendment dynamic for seizing a child to protect the child versus seizing a person suspected of criminal wrongdoing. I think that's true. I'm just trying to figure out if there's a difference about where it occurred here. And we have the school, and then we have an allegation that it was in the home, I think, and that it was maybe outside the home. Is your suggestion none of that really matters, that it's a reasonable suspicion standard notwithstanding? Uh, yes, your honor. I think the Eighth Circuit is clear that it is reasonable suspicion. However, the facts of this case are that the plaintiffs came outside of the home to speak to the officers. And there were only two children that were taken from the home by Detective Wilson. One was taken, she took from a school, and then she directed another officer to take another child from a school. Nevertheless, outside of the home, there's nothing in the record that says that she went inside of the home. The Payton Supreme Court case, I don't think that that's applicable here. That's about New York officers actually going into the homes of two men without a warrant to arrest them for suspected murder, for felony arrests. So I just don't think that the Payton case is applicable here. I think the correct line of cases that we need to look at specifically are the Stanley cases. But even then, those cases involve taking the children into protective custody. Here, we just had a transport of children to a location... Well, did we have a seizure? You know... It's kind of hard to say there's no seizure. It was involuntary. They were taken from the parents and removed to a police station for a period of time. Yes. You can try to make that argument, but I don't see it. Yeah, no, I agree, Your Honor. I think that there was a seizure of the children to transport them to the Child and Family Advocacy Center. I just think that it presents a different dynamic like the Stanley case was talking about. And so after they executed the search warrant, Detective Wilson was there, and that's when they found more drugs and drug paraphernalia. Specifically, there was a smoking bomb on the floor next to a coffee table. There was a bag of marijuana on the coffee table, another smoking glass on the kitchen. Let me ask you what I asked your counsel on the other side. Was there a mechanism under state law to obtain a warrant, either like a criminal warrant for a child in danger or some civil order that would allow them to take the children into custody? Was that available under state law? In reading these cases, I think that an officer, somebody with DHS, they could have initiated a protective custody hold of the children. As far as what's in the juvenile code, I tried to figure out what exactly that process would be. I don't know if it would be a family need of services petition. That's what we call an artificial offense petition. I don't know if it would need to be something like that or an emergency, some sort of emergency protective custody petition, I think is the way that they could go. But here in this instance, it's undisputed that Detective Sabby is the officer that called the hotline. That was on March 2nd, which was the same day that the Welters came in for a voluntary interview. And when they came in for that voluntary interview, I think it's important to note that they told officers, which Detective Wilson knew, that they regularly smoked marijuana in the home, that all of the marijuana in the home was everyone's, and no one had a medical marijuana card. And under the Child Maltreatment Act, the definition of abuse is permitting a child to either consume or inhale marijuana. Did the interview occur post-seizure? Of the children? Yes. No, the interview... This was post-warrant, is that right? Yes, Your Honor. So the warrant was executed on February 26th of 2020. The Welters came in for that voluntary interview on March 2nd. That's also the day that Detective Sabby called the hotline. And then March 4th was the day that DHS scheduled the interviews of the children. Counsel, I've got maybe one or two. Yes, Your Honor. They should be pretty easy questions because they have to do with what's in the record and what was in the record before the district court. And it has to do with what you just mentioned. Does the record explain why law enforcement was transporting the children? Yes, Your Honor. So in the record, the DHS investigator, Amanda Woodhams, she testified that DHS, absent a protective custody hold, DHS cannot transport the children. And Detective Wilson testified in her deposition that they don't want the alleged offenders, which were the parents in this case, to transport the alleged victims, which were the children, to the CFAC because they didn't want them to influence the statements that they would give in the interviews. So was this involvement of law enforcement, was this kind of an extra procedural or outside of the terms of some black letter law that led to law enforcement being involved here? Was this some kind of custom and practice that this DHS office observed, for example? So Investigator Woodhams did testify that it was not uncommon for DHS to request law enforcement to transport when there's not a protective custody hold and especially when the parents are the alleged offenders. Can she continue? You can answer the question. So I think that it was something that DHS did. And I think that Detective Wilson testified that she transported children. Well, really, you know, you say request law enforcement to transport. That sounds like these folks needed a ride and they didn't have a car. You know, they want to go, but they just don't have any transportation. So we're going to ask law enforcement to transport. But really, it was more than just a transport, wasn't it? I mean, there's actual removal of the children. Yes, Your Honor. Detective Wilson did. Under circumstances in which DHS could not do so. Yes, Your Honor, that's correct. Okay. And so, and you've not been able to provide any black letter authority or case law that permits law enforcement to play this role with respect to DHS? So in the Child Maltreatment Act, there is a provision that says that law enforcement can accompany DHS. So it's not necessarily right on point for this specific thing. But I would argue that because of that reason, at least, at the very least, it's not clearly established on March 4th of 2020 that Detective Wilson would have been on notice that her conduct was unlawful. All right. Thank you. Thank you, Your Honors. Thank you, Counsel. Mr. Norwood, we used up your time with some questions and this is a relatively brief argument. I'm sorry, we've evened out your time. Oh, in short, I'm going to afford you another minute or two if you feel you need to rebut something you've heard. We used up your 10 minutes. For Judge Shepard, this is custom and habit that they've been doing this. I've been a lawyer for 38 years and I practice in this neighborhood and they do it as a courtesy to the Department of Human Services because the reason that they're doing it is they don't want, they go to the house or wherever the children are at, they seize them at that point because they don't want the parents to take them to the Child Advocacy Center because the parents are going to be going, don't tell them I smoke marijuana, don't tell them I do this, this and that and the other. They're trying to work the kid over before he gets there. That's why they do it. So, but it's just been something that's been done in Benton County since I've been a lawyer. Thank you, Mr. Norwood. Thank you. Thank you also, Ms. Gibson. The Court appreciates both counsel's participation and argument before the Court this morning. It's been helpful. We'll continue to study the materials and render decision in due course. Thank you. Counsel may be excused.